582 S.E.2d 407

**The STATE, Respondent,**

v.

**Florence Robinson EVANS, Petitioner.**

**No. 25661.**

Supreme Court of South Carolina.

Heard Jan. 9, 2003.
Decided June 9, 2003.
Rehearing Denied July 14, 2003.

580

Senior Assistant Appellate Defender Wanda H. Haile, of Columbia, for petitioner.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, and Assistant Attorney General S. Creighton Waters, all of Columbia, for respondent.

CHIEF JUSTICE TOAL:

Florence Evans ("Evans") was granted certiorari from the Court of Appeals' decision reversing trial court's suppression of Evans' statement and remanding this case to the trial court with direction that the trial court make a more definite ruling as to whether the arresting officers violated petitioner's *Miranda*[1] rights. Evans was charged with three counts of murder after her three children died in a mobile home fire.

---

1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

## FACTUAL/PROCEDURAL BACKGROUND

On the morning of March 4, 1994, Evans' mobile home caught fire and burned to the ground, killing her three children. SLED arson agent Terry Alexander ("Alexander") arrived to investigate the cause of the fire and spoke with Evans two separate times that afternoon. A very upset Evans was willing to talk with Alexander but refused to provide a written statement. Alexander returned to the house where Evans was staying ten days later to get a formal written statement from her. Evans was not at the home, so Alexander left a message asking her to come to the Pageland, South Carolina police station.[2]

Evans arrived at the police station later that day with some of her relatives, and Alexander and SLED Lieutenant Doug Ross ("Ross") took her into a back office to take her statement. The SLED agents never read Evans her *Miranda* rights.

During the interview, Evans gave several reasons as to how the fire may have started: a faulty electrical outlet, dogs under the trailer disrupting the electrical wiring, a heating stove that was left on, and the fact that her 21 year-old sister was teaching her son how to light a fire. Ross repeatedly told Evans that he did not believe any of her explanations. Evans remained emotionally unstable during the interview. She sobbed frequently and continuously asked the agents "to get her some help." Finally, the agents determined that the interview was bearing fruit, and they stepped out of the room.

The agents met Agent Jennifer Edwards ("Edwards") of the SLED Child Fatality Division outside the room, and they requested that she attempt to talk with Evans who was shaking, sobbing, and very nervous. Edwards tried to sympathize with Evans by discussing religion, saying that her children must be in heaven. They also discussed Evans' dead mother and "female problems" that Evans had experienced with the birth of her three children. Evans kept on asking for help, and Edwards told her she would get her some help.

---

2. By the time that Alexander returned to get a statement from Evans, he had received results from a forensics test that concluded that an "accelerant" was present in the mobile home fire.

The two women were in the room together for around 45 minutes to an hour. Evans went to the bathroom two times during this period, and Edwards accompanied her and waited outside the bathroom door.

Eventually, Evans told Edwards, "I dropped a lit piece of paper on the floor. I walked next door and waited until somebody saw the fire." Edwards immediately called Ross and then Alexander into the room, and Evans repeated the statement three times. Alexander wrote down the statement on a "voluntary statement" form, which already contained Evans' original written statement taken earlier in the interview. Evans signed and initialed the document. She testified that she believed that in signing the document that she would get some help. Shortly after making the statement, the agents arrested Evans. The interview had lasted for three hours.

Evans' cousin Inez Robinson, who accompanied Evans to the police station, attempted to go back and see Evans three times, but the officers refused her access to the back room.

The trial judge granted Evans' motion to suppress the inculpatory statement that Evans gave to the SLED agents, finding that the agents had placed Evans in the functional equivalent of a custodial interrogation and should have read Evans her *Miranda* rights.

Initially, the Court of Appeals upheld the trial judge's determination, finding that Evans was not free to leave the custody of the SLED agents. *State v. Evans*, 341 S.C. 219, 534 S.E.2d 10 (Ct.App.2000). On rehearing, the Court of Appeals reversed and remanded the action so that the trial judge could make a more definite ruling as to whether Evans was in custody. *State v. Evans*, 343 S.C. 685, 541 S.E.2d 852 (Ct.App.2001).

This Court granted a Petition for Certiorari to review the Court of Appeals' reversal of the trial judge's grant of the motion to suppress an inculpatory statement. Evans raises the following issue for review:

Did the Court of Appeals err in reversing the trial court and remanding the issue of whether Evans was in police custody when she gave an inculpatory statement?

## STANDARD OF REVIEW

■ Appellate review of whether a person is in custody is confined to a determination of whether the ruling by the trial judge is supported by the record. *State v. Easler*, 322 S.C. 333, 342, 471 S.E.2d 745, 751 (Ct.App.1996) *aff'd as modified*, 327 S.C. 121, 489 S.E.2d 617 (1997).

## LAW/ANALYSIS

■ Evans asserts that the Court of Appeals erred in reversing and remanding the trial judge's finding that she was in custody when she made her inculpatory statement and that her statement should be suppressed because the agents failed to *Mirandize* her. We agree.

■ The purpose of the *Miranda* warnings is to apprise the defendant of her constitutional privilege to not incriminate herself while in the custody of law enforcement. *Miranda*, 384 U.S. at 444, 86 S.Ct. at 1612. Law enforcement must state the *Miranda* warnings "after a person has been taken into custody or otherwise deprived of his freedom of action in any way." *Id.* To determine whether a suspect is in custody, the trial court must examine the totality of the circumstances, which include factors such as the place, purpose, and length of interrogation, as well as whether the suspect was free to leave the place of questioning. *Berkemer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984); *United States v. Helmel*, 769 F.2d 1306, 1320 (8th Cir.1985); *Robert Kaupp v. Texas*, —— U.S. ——, 123 S.Ct. 1843, 155 L.Ed.2d 814, 2003 WL 2010974 (2003). The custodial determination is an objective analysis based on whether a reasonable person would have concluded that he was in police custody. *Bradley v. State*, 316 S.C. 255, 257, 449 S.E.2d 492, 493–494 (1994); *State v. Sprouse*, 325 S.C. 275, 282, 478 S.E.2d 871, 875 (Ct.App.1996).

In his oral order, the trial judge used the correct objective standard in analyzing whether Evans was in custody. In addition, he stated, "[y]ou also have to take into account that she was at the time in her mid–20s, mildly retarded, no evidence of any record so, therefore, no real evidence of exposure." The Court of Appeals reversed and remanded the trial judge's determination because it found that the judge might have tainted the objective custody analysis with this

subjective comment. *State v. Evans*, 343 S.C. at 692, 541 S.E.2d at 855.

We believe that the trial judge's order provides abundant justification for his determination that Evans was in police custody. First, he found Evans was not *free to leave*. When Evans went to the restroom, Agent Edwards accompanied her at all times and waited outside the restroom. Also, the officers would not permit Evans' cousin to go back to the interview room. Second, the *place* where the agents interviewed Evans also concerned the judge in that it was in a back office in the police station. Third, the judge noted that the interview was *lengthy*, as it lasted three hours. Finally, the judge was most concerned with the agent's *purpose*. He said:

> What really turns it for me was that when ... That her story was challenged and once that was challenged, that changes from just a routine inquiry to name, rank and serial number. They (Alexander and Ross), in fact, put it to her that they did not believe her. As soon as that occurred, then the switch over to the female officer (Edwards) occurred.

We hold that the trial judge's order, *in toto*, reflects that he objectively examined the totality of the circumstances and concluded that the agents placed Evans in a custodial interrogation setting, which warranted a recitation of her *Miranda* rights. Accordingly, the trial judge was justified in granting Evans' motion to suppress her inculpatory statement.

### CONCLUSION

We **REVERSE** the Court of Appeals and find that the trial judge did not err in granting Evans' motion to suppress an inculpatory statement. We believe that after considering the totality of the circumstances, the judge did not abuse his discretion in concluding that Evans was in police custody when she made the inculpatory statement.

MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.