THIS OPINION HAS NO PRECEDENTIAL 
 VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT 
 AS PROVIDED BY RULE 239(d)(2), SCACR. 
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Alan D. Anderson, Robert and Diane
Ressler, 
 William Todt, Thomas A. Brooks, Juliana S. Calhoun, Robin and Keith Lee, 
 Donald J. and Michele B. Hatcher, Philip D. and Jean F. Landfried,       
Appellants/Respondents,
 
 
 

v.

 
 
 
Hank and Linda Buonforte,       
Respondents/Appellants.
 
 
 

Appeal From Sumter County
W. C. Coffey, Jr., Special Referee

Unpublished Opinion No. 2004-UP-270
Heard January 13, 2004  Filed April 
 19, 2004

AFFIRMED

 
 
 
John S. Keffer, of Sumter, for Appellants-Respondents.
Kristi F. Curtis, of Sumter, for Respondents-Appellants.
 
 
 

 PER CURIAM: Alan D. Anderson, 
 Robert Ressler, Diane Ressler, William Todt, Thomas A. Brooks, Juliana S. Calhoun, 
 Robin Lee, Keith Lee, Donald J. Hatcher, Michele B. Hatcher, Philip D. Lanfried, 
 and Jean F. Landfried (collectively the Neighbors), sued Hank and Linda Buonforte 
 (collectively the Buonfortes), seeking to enforce the restrictive covenants 
 of the Indian Hills Subdivision in Sumter, South Carolina.  The special referee 
 ordered the Buonfortes to remove a two-car garage from their property and modify 
 a recently built extension to their home.   Both parties appeal.  We affirm. 

FACTUAL/PROCEDURAL BACKGROUND
The Buonfortes began construction 
 of a house in the Indian Hills Subdivision in Sumter, South Carolina.   Hank 
 Buonforte convinced his parents to move into his home, promising to build an 
 extension to the main house (the mother-in-law wing). Thereafter, he approached 
 the City Planning Directors Office for a variance to his permit and applied 
 to the Sumter City-County Board of Appeals (the Board) for a variance to the 
 citys setback requirements to build a garage. However, at the Buonfortes hearing 
 before the Board, several neighbors appeared in opposition to the request. 
The Buonfortes applied 
 for a variance with the subdivisions designated representative for enforcement 
 of the restrictive covenants.  However, eighteen days later, before the Buonfortes 
 received a response from the representative, the Neighbors sued the Buonfortes, 
 alleging the Buonfortes mother-in-law wing and garage violated the communitys 
 restrictive covenants because:  1) the main structure was no longer a single-family 
 dwelling; and 2) the house no longer complied with the setback lines.  Additionally, 
 the Neighbors sought a temporary restraining order prohibiting any further construction 
 on the lot. 
After a full hearing on the merits, 
 the special referee ruled the home was a single-family dwelling within the meaning 
 of the term in the restrictive covenants.  Furthermore, the special referee 
 determined the house violated the general scheme of development and ordered 
 the garage removed and the mother-in-law wing altered to better conform to 
 surrounding houses.  The special referee also ordered the Buonfortes to pay 
 all court costs and special referee fees.  Both parties appeal.
STANDARD OF REVIEW
          An action to enforce 
 a restrictive covenant is in equity.  South Carolina Dept of Natural Res. 
 v. Town of McClellanville, 345 S.C. 617, 622, 550 S.E.2d 299, 302 (2001).  
 As such, this court may view the facts in accordance with our preponderance 
 of the evidence.  However, we should not disregard the findings of the special 
 referee, who was in a better position to weigh the credibility of witnesses.  
 Tiger, Inc. v. Fisher Agro, Inc., 301 S.C. 229, 237, 391 S.E.2d 538, 
 543 (1990).
LAW / ANALYSIS
I.       The Neighbors 
 Appeal
A.      Single-Family Dwelling
Initially, the Neighbors argue 
 the special referee erred by failing to rule on whether the Buonfortes house 
 was a single-family dwelling or a duplex.  We disagree.
An appellate court must 
 view the trial courts statements as a whole to determine its reasoning.  State 
 v. Evans, 354 S.C. 579, 584, 582 S.E.2d 407, 410 (2003).  Furthermore, [a]n 
 order should be construed within the context of the proceeding in which it is 
 rendered.  Dibble v. Sumter Ice & Fuel Co., 283 S.C. 278, 282, 322 
 S.E.2d 674, 677 (Ct. App. 1984); see also Eddins v. Eddins, 304 
 S.C. 133, 135, 403 S.E.2d 164, 166 (Ct. App. 1991) (holding judgments are to 
 be construed as other instruments, and the determinative factor is the intention 
 of the court, considering the judgment in its entirety).  
The special referees 
 order specifically found the Buonfortes house, constitutes a single family 
 unit as defined by the restrictive covenants. Thus, the Neighbors claim is 
 without merit.
Next, the Neighbors assert the 
 contrary argument that the special referee erred by ruling on whether the Buonfortes 
 structure constituted a single-family dwelling or a duplex. They contend this 
 issue was neither raised by the pleadings nor argued at trial.  We disagree. 

A judgment must conform to the pleadings and be 
 in accordance with the theory of action upon which the case was tried.  Chandler 
 v. Merrel, 291 S.C. 227, 228, 353 S.E.2d 135, 136 (1987).   However, [w]hen 
 issues not raised by the pleadings are tried by express or implied consent of 
 the parties, they shall be treated in all respects as if they had been raised 
 in the pleadings.  Rule 15(b), SCRCP.  
In pertinent part, the 
 Neighbors complaint alleges, the . . . [Buonfortes] construction . . . violate[s] 
 the restrictive covenants in the following particulars:  . . . The . . . [Buonfortes] 
 are developing and/ or constructing a residence and attached apartment/duplex 
 which is in clear violation of the limit to a single family residence . . . 
 .  Furthermore, during the trial, both the Neighbors and the Buonfortes presented 
 extensive testimony about whether the structure was a single-family dwelling 
 or a duplex.  Neither party objected to the admission of the testimony.  Thus, 
 this issue was both raised in the pleadings and tried by consent during the 
 trial.  Consequently, this issue is without merit.
Next, the Neighbors argue the 
 special referee erred by considering the testimony of two of the Buonfortes 
 witnesses.  Specifically, the Neighbors claim the testimony was irrelevant.  
 We disagree.
Any evidence that assists in 
 getting at the truth of the issue is relevant and admissible, unless because 
 of some legal rule it is incompetent.  Toole v. Salter, 249 S.C. 354, 
 361, 154 S.E.2d 434, 437 (1967).  Furthermore, 

[i]n determining a dispute concerning 
 the relevancy of . . . evidence, the question to be resolved is as to whether 
 there is a logical or rational connection between the fact which is sought to 
 be presented and a matter of fact which has been made an issue in the case. 
 Relevancy is that quality of evidence which renders it properly applicable in 
 determining the truth and falsity of matters in issue between the parties to 
 a suit. All that is required to render evidence admissible is that the fact 
 shown thereby legally tends to prove, or make more or less probable, some matter 
 in issue, and bear directly or indirectly thereon. 

Id.  (internal citations 
 omitted).        
When a term is not defined within 
 a contract, evidence of its usual and customary meaning is competent to aid 
 in determining its meaning.  S.C. Farm Bureau Mut. Ins. Co. v. Oates, 
 356 S.C. 378, 382-83, 588 S.E.2d 643, 645 (Ct. App. 2003).
The restrictive covenant states 
 only single-family dwellings are permitted on the Buonfortes property.  Furthermore, 
 the covenant expressly prohibits the construction of duplexes.  However, neither 
 single-family dwelling nor duplex is defined within the restrictive covenants.  

Thus, attempting to demonstrate 
 the house was a single-family dwelling, the Buonfortes presented the testimony 
 of William Henry Hoge, the Planning Director for the Sumter Planning Commission, 
 and John Humphries, the Building Official for the City of Sumter, who testified 
 that pursuant to the applicable Sumter zoning ordinances, the Buonfortes house 
 was a single-family dwelling.   The Neighbors objected, arguing only the testimony 
 of Robert Ross Dinkins, the person responsible for enforcing the restrictive 
 covenants, was relevant on the issue.  
We conclude the admitted testimony 
 was relevant to determine the meaning of the term single-family dwelling within 
 the restrictive covenants, as the zoning ordinances were evidence of its usual 
 and customary meaning.  Thus, the special referee did not err by admitting the 
 testimony.
Lastly, the Neighbors 
 argue the special referee abused his discretion by ruling the Buonfortes structure 
 was a single-family dwelling.  We disagree.
Dinkins testified he 
 was responsible for enforcing the restrictive covenants, and, in his opinion, 
 the structure was a duplex.  The Neighbors also admitted the testimony of Charles 
 R. McCreight, an architect, who opined the structure was a duplex.  
In response, the Buonfortes 
 presented the testimony of Hoge and Humphries.  Hoge testified it is his duty 
 to enforce the zoning ordinances of the City of Sumter.  Additionally, he testified 
 the Indians Hills Subdivision is within the City of Sumter, zoned in an area 
 where duplexes were prohibited.  In his opinion, the structure constituted a 
 single-family residence under the applicable Sumter zoning ordinances.  Humphries, 
 who is responsible for enforcing the City of Sumter building regulations, testified 
 the structure was a single-family dwelling and did not meet the definition of 
 a duplex within the building code definition.  
Viewing the entirety of the record, 
 we agree with the special referee that the weight of the evidence indicates 
 the Buonfortes structure was a single-family dwelling for purposes of the restrictive 
 covenants.  
B.      Notice of Restrictive Covenants
The Neighbors 
 argue the special referee erred by finding the Buonfortes were not on notice 
 of the restrictive covenants. The Neighbors misunderstand the special referees 
 ruling.
An appellate court must 
 view the trial courts statements as a whole to determine its reasoning.  Evans, 
 354 S.C. at 584, 582 S.E.2d at 410.  Furthermore, [a]n order should be construed 
 within the context of the proceeding in which it is rendered.  Dibble, 
 283 S.C. at 282, 322 S.E.2d at 677; see also Eddins, 304 S.C. 
 at 135, 403 S.E.2d at 166 (holding judgments are to be construed as other instruments, 
 and the determinative factor is the intention of the court, considering the 
 judgment in its entirety).  
Constructive notice and actual notice 
 are not one in the same.  Strother v. Lexington County Recreation Commn, 
 332 S.C. 54, 64, 504 S.E.2d 117, 122 (1998).  Rather, a person has actual notice 
 where the person . . . either knows of the existence of the particular facts 
 in question or is conscious of having the means of knowing it, even though such 
 means may not be employed by him.   Id. at 64 n. 6, 504 S.E.2d at 122 
 n. 6.  In contrast, constructive notice is a legal inference which substitutes 
 for actual notice. It is notice imputed to a person whose knowledge of facts 
 is sufficient to put him on inquiry; if these facts were pursued with due diligence, 
 they would lead to other undisclosed facts.  Id.  A homeowner is charged 
 with constructive notice of any restriction properly recorded within the chain 
 of title.  Harbison Comm. Assn, Inc., v. Mueller, 319 S.C. 99, 103, 
 459 S.E.2d 860, 863 (Ct. App. 1995).
The Buonfortes bought 
 a piece of property in the Indian Hills Subdivision with restrictive covenants 
 in the chain of title.  The Buonfortes denied actual notice of the restrictive 
 covenants.  The Neighbors did not present any evidence within the record indicating 
 the Buonfortes were on actual notice of the restrictive covenants.
In the findings of fact, the 
 special referees final order states that the Buonfortes deed did not put the 
 Buonfortes on adequate notice of the restrictive covenants.  Subsequently, 
 as a conclusion of law, the special referee held the Buonfortes were unaware 
 of the restrictive covenants when they began building the garage and mother-in-law 
 wing.  
We conclude a reasonable 
 reading of the special referees order, in light of the proceedings in which 
 it was rendered, indicates the special referee found the Buonfortes were not 
 on actual notice, as opposed to constructive notice, of the restrictive covenants.  
 Furthermore, this finding is supported by the weight of the evidence within 
 the record.  Thus, we hold the special referee did not err. 
C.      Balancing of the Equities
The Neighbors argue 
 the special referee erred by balancing the equities in an arbitrary and unfair 
 manner.  Specifically, the Neighbors contend the Buonfortes came to the hearing 
 with unclean hands, and thus, both the mother-in-law wing and the garage should 
 be removed.  We disagree.
When this court is sitting 
 in equity, and thus viewing evidence for our own preponderance, we are to consider 
 the equities of both sides, balancing the two to determine what, if any, relief 
 to give.  See Foreman v. Foreman, 280 S.C. 461, 464-65, 313 S.E.2d 
 312, 314 (Ct. App. 1984).  However, if a party has unclean hands, the party 
 is precluded from recovering in equity.  A party will have unclean hands, where 
 the party behaves unfairly in a matter that is the subject of the litigation 
 to the prejudice of the defendant.   Ingram v. Kaseys Assocs., 340 
 S.C. 98, 107, 531 S.E.2d 287, 292 (2000). 
The Neighbors sued the Buonfortes, 
 seeking to enforce the restrictive covenants of the Indian Hills Subdivision.  
 Specifically, the Neighbors argued the additions to the Buonfortes house created 
 a duplex, the mother-in-wing and garage violated the setback lines, and the 
 mother-in-law wing and garage did not conform with the aesthetics of the neighborhood.  

While the litigation was pending, 
 the parties signed a consent order providing the following:

ORDERED, that the . . . [Buonfortes] 
 immediately cease any further construction regarding the mother-in-law wing 
 on the property . . . . The . . . [Buonfortes] will be permitted to install 
 the front window units of said wing along with the door, and can also complete 
 the sides and rear of said wing, however, the . . . [Buonfortes] may not continue 
 to build or improve the front of the structure.  Further, the . . . [Buonfortes] 
 may not destruct or improve the wall separating the mother-in-law wing from 
 the main structure . . . . ORDERED, that the . . . [Buonfortes] be allowed to 
 complete the main structure of said building . . . Further, the . . . [Buonfortes] 
 will be allowed to complete the interior of the balance of the structure . . 
 . and the exterior of the entire structure . . . ORDERED, that if the . . 
 . [Buonfortes] do continue to build or improve said property beyond the parameters 
 of this Order, that the . . . [Buonfortes] do so at their own risk[.]

(emphasis added).  
Subsequently, the Buonfortes 
 completed construction of the garage and interior of the mother-in-law wing.  
 Following a final hearing, the special referee ruled the Buonfortes must remove 
 the garage.  Furthermore, the special referee ruled the Buonfortes must remove 
 the front door entrance of the mother-in-law wing, such that the house now only 
 has one front entrance.  Moreover, the special referee ordered the Buonfortes 
 to remove the gabled entrance roof.  
The Neighbors now contend 
 the special referee erred by balancing the equities to allow the mother-in-law 
 wing to remain because the Buonfortes are seeking equity with unclean hands.  
 Specifically, the Neighbors allege the following particulars weigh against the 
 Buonfortes:  1) the Buonfortes misrepresented information on their original 
 building permit because they did not request a permit for the additions to the 
 house, although they knew they planned to construct additions; 2) the Buonfortes 
 had constructive knowledge of the restrictive covenants before they began to 
 build the additions to their house; and 3) the Buonfortes continued to build 
 after they had actual knowledge of the restrictive covenants.
 We do not view the evidence 
 in the same light as the Neighbors.  Rather, our view of the evidence indicates 
 the Buonfortes applied for a building permit to construct their original residence.  
 Although the Buonfortes may have intended to construct additions to their residence 
 when they applied for the original building permit, they did not intend to do 
 so without acquiring an additional permit.  In fact, prior to construction of 
 the additional structures, the Buonfortes applied for permits to build the additional 
 structures, leading to this lawsuit.
The evidence also indicates 
 the Buonfortes were not on actual notice of the restrictive covenants, as no 
 evidence exists within the record indicating they actually knew the restrictive 
 covenants existed.  Rather, the evidence indicates that prior to buying the 
 piece of property, the Buonfortes hired an attorney to conduct a title search.  
 The attorneys report does not indicate the existence of restrictive covenants.  
 Thus, although the Buonfortes were on constructive notice of the restrictive 
 covenants, they were not on actual notice, mitigating any allegation of unclean 
 hands.
Pursuant to the above 
 quoted agreement, the Buonfortes continued to build the additions to their home 
 after commencement of this lawsuit.  With the exception of the garage, which 
 the special referee ordered the Buonfortes to remove, the continued building 
 was permitted under the agreement.  
We conclude the Buonfortes 
 did not have unclean hands such that they are precluded from the aide of equity, 
 as they have not acted unfairly to the prejudice of the Neighbors.  Moreover, 
 we conclude the special referee appropriately weighed the equities of the situation.  
 Thus, we hold the special referee did not err. 
II.      The Buonfortes 
 Appeal
A.      General Scheme of Development
The Buonfortes 
 argue the special referee erred by ordering them to remove the garage and alter 
 the mother-in-law wing.  They contend Dinkins implicitly approved their construction 
 plans pursuant to an automatic approval provision in the restrictive covenants.  
 We disagree.
The cardinal rule of contract interpretation 
 is to ascertain and give legal effect to the parties intentions as determined 
 by the contract language.  Schulmeyer v. State Farm Fire & Cas. Co., 
 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003).  Thus, [i]f the contracts language 
 is clear and unambiguous, the language alone determines the contracts force 
 and effect.  Id.
The restrictive covenants provide: 

In the event Robert Ross Dinkins, or his designated representative, 
 fails to approve or disapprove within thirty days after plans and specifications 
 have been submitted to him, or in the event no suits to enjoin the construction 
 have been commenced prior to the completion thereof, approval will not be required 
 and the related covenants shall be deemed to have been fully complied with.

(emphasis added).  
The Buonfortes submitted a copy 
 of their plans to Dinkins.  Subsequently, approximately eighteen days after 
 the Buonfortes submitted their plans to Dinkins and before Dinkins responded, 
 the Neighbors sued the Buonfortes.  Because the Neighbors filed suit against 
 the Buonfortes before the expiration of Dinkins thirty days response period, 
 we hold this provision of the restrictive covenants is inapplicable.
B.      Fees and Costs
The Buonfortes argue 
 the special referee erred by ordering them to pay all of the fees and costs 
 of the litigation.  We disagree.  
In every civil action commenced 
 or prosecuted in the courts of record in this State . . . the attorneys for 
 the plaintiff or defendant shall be entitled to recover costs and disbursements 
 of the adverse party.  S.C. Code Ann. § 15-37-10 (1977); see Rule 54(d), 
 SCRCP ([C]osts shall be allowed as of course to the prevailing party unless 
 the court otherwise directs.).  However, [n]o costs will be allowed to any 
 party unless he succeed, in whole or in part, in his claim or defense, unless 
 otherwise directed by the judge hearing the cause.  S.C. Code Ann. § 15-37-20 
 (1977).  
Initially, we note, the Buonfortes 
 do not argue the special referee lacked authority to award fees and costs.  
 Furthermore, the Buonfortes do not argue the special referee awarded fees and 
 costs for expenses not provided for by statute.  Rather, the Buonfortes only 
 argue the special referee abused his discretion by ordering the Buonfortes to 
 pay all of the fees and costs of the litigation.
In an action in equity, the decision 
 to grant or deny costs is largely a matter within the sound discretion of the 
 trial court.  See Cauthen v. Cauthen, 81 S.C. 313, 315, 62 S.E.2d 
 319, 320 (1908).  Thus, this court will not disturb the decision of the trial 
 court absent a clear abuse of discretion.  Id.
The Neighbors sued the Buonfortes, 
 seeking to enforce restrictive covenants.  Specifically, they sought to have 
 the Buonfortes remove both the mother-in-law wing and the garage.  The Buonfortes 
 answered, seeking to maintain both additions to their house.  The special referee 
 ordered the Buonfortes to remove the garage.  Furthermore, the special referee 
 ordered the Buonfortes to remove the front entrance to the mother-in-law wing 
 and the gabled front entrance, thus bringing the mother-in-law wing in aesthetic 
 alignment with the rest of the neighborhood.  
From the record before us, we 
 conclude the special referee did not commit a clear abuse of discretion by ordering 
 the Buonfortes to pay all of the fees and costs of the litigation.  Thus, we 
 hold the special referee did not err. 
CONCLUSION
For the foregoing reasons, the 
 order of the special referee is
 AFFIRMED.
HEARN, C.J., HOWARD, 
 and KITTREDGE, JJ., concurring.