# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

David Richard Walker, Jr., Appellant.

Appellate Case No. 2017-000550

_____

Appeal From Lexington County
R. Knox McMahon, Circuit Court Judge

_____

Opinion No. 5727
Submitted February 18, 2020 – Filed May 20, 2020

_____

**AFFIRMED**

_____

Appellate Defendant David Alexander, of Columbia, for
Appellant.

Attorney General Alan McCrory Wilson, Deputy
Attorney General Donald J. Zelenka, Senior Assistant
Deputy Attorney General Melody Jane Brown, and
Assistant Attorney General Caroline M. Scrantom, all of
Columbia, for Respondent.

_____

**KONDUROS, J.:**  David Richard Walker, Jr. appeals his conviction for murder.
On appeal, Walker argues the trial court erred in admitting his statement to police
that he had an outstanding warrant for murder, because he was not informed of his
*Miranda*[1] rights before making the statement.  We affirm.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

**FACTS**

A grand jury indicted Walker for the murder of Catherine Banty. During pretrial hearings, Walker testified that on the evening of December 10, 2012, Banty arrived at their shared home with their three-year-old daughter.[2] Walker stated he and Banty argued over Banty's abusive treatment of their child. Walker claimed that after the child was put to bed, the argument turned physical, and he manually strangled Banty to death in an act he alleged to be self-defense. When he realized Banty was dead, he left the home and walked to the train tracks, leaving his daughter in the home with Banty's body. Walker testified he got on a train early the next morning and rode it to Graniteville, where he got off and wandered around the woods for an indeterminable amount of time. Meanwhile, around noon on December 11, the child, walking down the sidewalk crying, was spotted by a neighbor who then went to Banty's home, discovered the body, and contacted law enforcement.

West Columbia police determined Walker resided in the home where Banty's body was discovered, and officers attempted to locate him by calling local hotels, hospitals, and detention centers. After two days of unsuccessful searching, Walker was declared a missing person, and because of a history of mental illness, he was entered into the National Crime Information Center (NCIC) database for missing and endangered persons. Walker resurfaced in Aiken County around 11:00 p.m. several days later on December 17. Aiken County Officer Darrell Kostyk observed Walker sitting at a table under an open air garage in the parking lot of a closed convenience store. Officer Kostyk testified that, based on his training and twenty years' experience in law enforcement, he believed the man he observed was casing the convenience store. Officer Kostyk's in-car camera system activated as he approached Walker in the store parking lot. Officer Kostyk also radioed for back up.

The video depicts Walker standing and walking toward Officer Kostyk's car as it pulls up to the front of the store. Officer Kostyk exited his car and asked Walker what he was doing. Walker placed his hands behind his back, in a manner

---

[2] Walker testified during his "Stand Your Ground" immunity hearing pursuant to section 16-11-440(A) of the South Carolina Code (2016) and his *Jackson v. Denno*, 378 U.S. 368 (1964) hearing, but did not testify at trial. However, he proceeded pro se at trial, and his opening statements to the jury mirrored his testimony from the hearings.

consistent with expecting to be handcuffed, as he continued to walk toward Officer Kostyk. Officer Kostyk approached Walker and patted him down. Officer Kostyk testified he patted Walker down for safety reasons and that he would have patted down anyone in those circumstances. While patting down Walker, Officer Kostyk paused at Walker's back right pocket and asked whether the object in that pocket was a knife. Walker's answer was unintelligible on the video. Officer Kostyk continued to pat down Walker and asked him for his name and birthdate and if he had any identification. Walker complied. Officer Kostyk asked Walker if he had any warrants, and Walker indicated he did. Officer Kostyk directed Walker to the hood of his patrol car where he ordered him to place his hands on the hood of the car and move his feet back to place him "at a position of disadvantage" for officer safety. Officer Kostyk radioed Walker's name and date of birth to dispatch. While he waited for dispatch to respond with information regarding Walker's warrants, Officer Kostyk asked Walker, "What do you think you've got a warrant for, bud?" Walker responded, "Murder." Officer Kostyk asked Walker to repeat himself, and Walker again responded, "Murder."

Officer Kostyk testified dispatch advised him Walker had been declared a missing endangered person by West Columbia Police but had no warrants for his arrest. Officer Kostyk then handcuffed Walker and placed him in the backseat of his patrol car. Officer Kostyk transported Walker to Aiken Regional Medical Center, where he was given a mental evaluation and released. After Walker's release from the medical center, Officer Kostyk offered him a ride back to Lexington County, which he accepted. A Lexington County officer met Officer Kostyk and Walker at a truck stop on I-20 in Lexington County and took Walker from Officer Kostyk. Walker was released to his father's care early the next morning. The investigation into Banty's death continued, and Walker was ultimately arrested on March 4, 2013, approximately two-and-a-half months after his December 17, 2012 stop.

Prior to trial, Walker, proceeding pro se, moved to exclude Officer Kostyk's in-car camera footage, asserting Officer Kostyk violated his constitutional rights by not informing him of his *Miranda* rights. Walker argued his statements to Officer Kostyk regarding having an outstanding murder warrant were the product of a custodial interrogation and thus, should be suppressed. The trial court ruled Officer Kostyk initiated a valid *Terry*[3] stop and that "at no time during the period of time at which certain identifying information was given and questions were asked to [Walker] by [Officer Kostyk] was [Walker] in custody." Therefore, the

---

[3] *Terry v. Ohio*, 392 U.S. 1 (1968).

trial court ruled Walker's statement regarding the outstanding murder warrant was admissible.

At trial, the State called Officer Kostyk to testify to his interaction with Walker. During his testimony, the State moved to introduce the video recording of the interaction into evidence. Walker objected as follows:

> Walker: Um, um, um objection, same one.
>
> The Court: What what's the, uh, basis of your objection?
>
> Walker: Same rules: relevancy and others.
>
> The Court: Relevancy and –
>
> Walker: Uh, relevancy, Your Honor, I'll –
>
> The Court: Alright, well I will find that, uh, it is, uh, relevant under Rule 401 so, uh, State's 45 did you say?

The video was subsequently admitted as evidence and published to the jury.

The jury convicted Walker of murder, and the trial court sentenced him to fifty years' imprisonment. This appeal followed.

## STANDARD OF REVIEW

"Appellate review of whether a person is in custody is confined to a determination of whether the ruling by the trial judge is supported by the record." *State v. Evans*, 354 S.C. 579, 583, 582 S.E.2d 407, 409 (2003); *see also State v. Navy*, 386 S.C. 294, 301, 688 S.E.2d 838, 841 (2010) (upholding the trial court's ruling when the question of whether the defendant was in custody was debatable and the ruling was therefore supported by the record).

## LAW/ANALYSIS

Walker contends the trial court erred in admitting the videotape of his statement regarding an outstanding murder warrant because police failed to advise him of his *Miranda* rights. We disagree.

As an initial matter, the State contends Walker's issue on appeal is unpreserved, because he offered one basis for his objection during his motion in limine and a different basis at the time of his contemporaneous objection to the videotape's introduction. We find this argument unpersuasive.

As noted from the colloquy above, Walker renewed his objection to admission of the video when the State sought to introduce it. The record illustrates Walker told the judge his objection was "the same one" and "the same rules: relevancy and others." This was sufficient to inform the court his objection was still premised on a *Miranda* violation that was the subject of the motion *in limine* hearing. Any objection on the grounds of relevance was in addition to his *Miranda* objection. *See* Rule 103(a)(1), SCRE (stating for alleged errors in evidentiary rulings to be preserved, "a timely objection or motion to strike" must appear in the record "stating the specific ground of objection, *if the specific ground was not apparent from the context* " (emphasis added)). Additionally, it appears the trial court preempted what may have been a further explanation from Walker as to the basis for his objection. Consequently, we are reluctant to apply the rules of preservation so strictly as to prevent a review of Walker's claims on the merits. *See Atl. Coast Builders & Contractors, LLC v. Lewis*, 398 S.C. 323, 330, 730 S.E.2d 282, 285 (2012) (noting it is "good practice for us to reach the merits of an issue when error preservation is doubtful").

Turning to the merits, "*Miranda* rights attach only if the suspect is subject to custodial interrogation." *State v. Lynch*, 375 S.C. 628, 633, 654 S.E.2d 292, 295 (Ct. App. 2007).

> Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "Interrogation is defined as express questioning, or its functional equivalent which includes words or actions on the part of the police **(other than those normally attendant to arrest and custody)** that the police should know are reasonably likely to elicit an incriminating response." *State v. Sims*, 304 S.C. 409, 416-17, 405 S.E.2d 377, 381-82 (1991).

*State v. Brown*, 389 S.C. 84, 92, 697 S.E.2d 622, 627 (Ct. App. 2010) (emphasis by court).

"To determine whether a suspect is in custody, the trial court must examine the totality of the circumstances, which include factors such as the place, purpose, and length of interrogation, as well as whether the suspect was free to leave the place of questioning." *Evans*, 354 S.C. at 583, 582 S.E.2d at 410. "The custodial determination is an objective analysis based on whether a reasonable person would have concluded that he was in police custody." *Id*. "Drawing weapons, handcuffing a suspect, placing a suspect in a patrol car for questioning, or using or threatening to use force does not necessarily elevate a lawful stop into a custodial arrest for *Miranda* purposes." *State v. Corley*, 383 S.C. 232, 244, 679 S.E.2d 187, 193 (Ct. App. 2009), *aff'd as modified*, 392 S.C. 125, 708 S.E.2d 217 (2011) (quoting *United States v. Sullivan*, 138 F.3d 126, 132 (4th Cir. 1998)).

Walker does not challenge the validity of the initial *Terry* stop by Officer Kostyk.[4] However, an examination of the encounter after the initial stop may help clarify whether the *Terry* stop evolved into a custodial interrogation, which would implicate Walker's Fifth Amendment rights and *Miranda*.

Once he approached Walker, Officer Kostyk asked Walker "What are you doing, guy?" Walker walked toward Officer Kostyk placing his hands behind his back. This conduct gave rise to two possibilities—Walker might be reaching for a weapon or he might be positioning his hands in anticipation of handcuffs. Either possibility would render Officer Kostyk's conduct in patting down Walker and/or inquiring about outstanding warrants reasonable under the circumstances as the situation was developing. *Rodriguez v. United States*, 575 U.S. 348, 356 (2015) (recognizing warrant checks are justified as a part of ensuring officer safety during traffic stops). Only after Walker responded yes, he had an outstanding warrant, did Officer Kostyk inquire about the nature of the warrant and ask Walker to lean over the hood of the patrol car. The video refutes Walker's suggestion that Officer Kostyk was overly aggressive or "right behind him" or that the other two officers who had arrived at the scene contributed to a sense of being overpowered. Officer Kostyk spoke in a reasonable tone and kept a reasonable distance from Walker.

---

[4] Officer Kostyk testified he observed Walker sitting suspiciously outside a closed convenience store known to be a popular target for robberies during the latter months of the year. Officer Kostyk stated that, based on his twenty-two years of experience in law enforcement, he believed Walker was casing the convenience store for a robbery. This may have provided reasonable suspicion to justify Kostyk's initial interaction with Walker but as that point is not appealed, we need not address it.

The other officers stood aside as the interaction between Officer Kostyk and Walker occurred.

Although Walker argues he did not feel free to leave, our courts have indicated it takes a higher threshold, something beyond the detainee's subjective belief, to rise to the level of custody. *Evans*, 354 S.C. at 583, 582 S.E.2d at 410 ("The custodial determination is an objective analysis based on whether a reasonable person would have concluded that he was in police custody."). Although Walker's freedom was deprived to an extent, that deprivation was not "significant" at the time of Officer Kostyk's question. *See Lynch*, 375 S.C. at 633-34, 654 S.E.2d at 295 (explaining custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way"). The stop was short in duration, approximately two minutes at the time of the disputed statement, and although at night, was in an open, public location. Officer Kostyk's asking Walker to lean over the car was the reasonable, permitted progression of the *Terry* stop that had been initiated and did not preclude the possibility that the encounter would come to a relatively swift and innocuous conclusion. Furthermore, Officer Kostyk's questions were not designed to elicit incriminating responses about a particular crime but to gather information relevant to his safety under the circumstances.

Based on all of the foregoing, we find the question of whether an objectively reasonable person would have considered himself in custody was at least debatable and was supported by the record. *See Evans*, 354 S.C. at 583, 582 S.E.2d at 409 ("Appellate review of whether a person is in custody is confined to a determination of whether the ruling by the trial judge is supported by the record."). Therefore the trial court's ruling is

**AFFIRMED.**[5]

**WILLIAMS and HILL, JJ., concur.**

---

[5] We decide this case without oral argument pursuant to Rule 215, SCACR.