**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Matthew Scott Young, Appellant.

Appellate Case No. 2022-000218

---

Appeal From Richland County
Robert E. Hood, Circuit Court Judge

---

Unpublished Opinion No. 2025-UP-248
Heard April 8, 2025 – Filed July 16, 2025

---

**AFFIRMED IN PART, VACATED IN PART**

---

Deputy Chief Appellate Defender Wanda H. Carter, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Joshua Abraham Edwards; and Solicitor Byron Gipson, all of Columbia, for Respondent.

---

**PER CURIAM:** Matthew Scott Young appeals his conviction for voluntary manslaughter and possession of a weapon during the commission of a violent crime for the 2017 stabbing of Abdias Pacius. Young argues that the trial court erred in:

(1) admitting incriminating statements he made to police before receiving *Miranda*[1] warnings; (2) admitting post-*Miranda* statements that were tainted by his previous unwarned admissions; and (3) imposing a five-year sentence for the weapons charge in violation of the plain language of section 16-23-490(A) of the South Carolina Code (2015).  We affirm in part and vacate in part.

## FACTS

On December 15, 2017, Young, Roberto Perozo, and another co-worker were doing landscape work in a neighborhood near Broad River Road.  As the three worked, the victim, Abdias Pacius, drove through the neighborhood at a high speed, allegedly striking Young's leaf blower with his vehicle.  Pacius then exited his vehicle and "aggressively" approached Young.  A physical altercation ensued and ended with Young stabbing Pacius in the chest with a hook-bladed knife.  Pacius died at the scene.

A neighborhood resident and Perozo both separately called 911 to report the stabbing.  During the neighbor's 911 call, Young got on the phone with the operator.  He told the operator that Pacius had been speeding down the road, got out of the car screaming, and "started" bleeding.  Young provided details to the operator and identified himself to the operator as "Scott."

During Perozo's 911 call, Perozo told the operator that Pacius had been speeding down the road, exited his vehicle, and went to fight one of the workers.  Perozo also told the operator that he and his co-workers carried knives, and that his co-worker, "Scott Young," had stabbed Pacius.

Officer Steven Sulser and Officer-in-Training Bruce Osagie were dispatched to the scene.  They arrived to find Pacius lying in the road unconscious and covered in blood.  Sulser told Young and his co-workers to back up so that police could secure the scene.  Upon receiving that direction, Young and his co-workers left and returned to their work truck, which was parked in a nearby cul-de-sac.  While walking to the truck, Young briefly stepped away from his co-workers and discarded the knife in the woods.

After Sulser and the other responding officers secured the crime scene and spoke to residents, Sulser was informed that one of the landscapers had claimed that Pacius already had the stab wound when he got out of the car.  Sulser looked into the vehicle's windows and noted the absence of blood inside the vehicle.  Another

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

officer, identified as Officer Vereen, approached Young and his co-workers in the cul-de-sac, asked them for their identification, and asked them to remain on scene so that Officer Sulser could speak with them.

Shortly thereafter, Sulser and Osagie approached the trio and Sulser asked them (while pointing generally at the group), "[you] the one who stabbed him?" Sulser then asked for Young by name and asked him if he had called 911. Sulser said he'd been informed by dispatch that the call was made by someone named Young, who told dispatch that he stabbed the victim in self-defense. Young denied making the 911 call. Sulser then returned to his car to contact dispatch for clarification. While he did so, another officer asked to search the work vehicle and to search Young's jacket; both requests were granted. When Sulser returned, he informed the trio that he was told one of them called 911 and said their co-worker stabbed the victim. Sulser warned the group not to lie to the police. Young immediately confessed, stating "I did it." He later testified he was motivated to confess out of fear that his co-workers would be wrongfully implicated. Young was handcuffed, arrested, and placed in the back of the squad car where Sulser gave him *Miranda* warnings. Sulser asked Young if he would answer questions without an attorney present. He agreed.

Young gave Sulser the location and description of the knife along with his own recollection of the events. Investigator Christian Ross arrived on the scene and questioned Young after advising him of his *Miranda* rights. Sulser then transported Young to the police station where he signed a waiver of rights form and gave a written statement consistent with prior confessions.

A Richland County Grand Jury indicted Young for murder and possession of a weapon during the commission of a violent crime. At trial, the State sought to admit the footage from Sulser's and Osagie's body cameras as well as Young's police station interview. The defense sought to suppress the footage on the grounds that Young was subjected to custodial interrogation in violation of *Miranda*. The defense also argued that the subsequent body cam and interrogation room videos were tainted by Young's statements made pre-*Miranda* warnings. The State asserted that while Young and his co-workers had been detained, it was a non-custodial investigative detention. Further, the State argued Young made the statements voluntarily.

The trial court ruled that the body camera footage was admissible up until Young was handcuffed. The court excluded the footage from that point until the time he was given his *Miranda* warnings by Sulser. The footage of Young being questioned post-*Miranda* was also admitted. The trial court found that, considering the totality of the circumstances, Young was not in custody until he was arrested. Specifically, the trial court noted that Sulser was a "beat cop"—not an investigator—who was

trying to gather information, and that all the interactions took place outside over a very short timeframe.

The jury found Young guilty of the lesser-included offense of voluntary manslaughter and guilty of possession of a weapon during the commission of a violent crime. Young was sentenced to life without the possibility of parole for voluntary manslaughter and given a concurrent sentence of five years for possession of a weapon during a violent crime.

## DISCUSSION

### A. Pre-*Miranda* Statements

Young argues the trial court erred in admitting the statements he made to Sulser prior to receiving *Miranda* warnings. We disagree.

*Miranda* warnings are required when an individual is subjected to custodial interrogation, which is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. "'Custody' is a term of art that specifies circumstances that are thought generally to present a serious danger of coercion." *Howes v. Fields*, 565 U.S. 499, 508-09 (2012). "'[I]nterrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted).

"Whether an individual is in 'custody' is determined based on the totality of the circumstances surrounding the interrogation, including 'the location, purpose, and length of interrogation, and whether the suspect was free to leave the place of questioning.'" *State v. Barksdale,* 433 S.C. 324, 332, 857 S.E.2d 557, 561 (Ct. App. 2021) (quoting *State v. Medley*, 417 S.C. 18, 25, 787 S.E.2d 847, 851 (Ct. App. 2016)). A court must determine objectively "whether a reasonable person in the suspect's position would have understood himself to be in custody." *State v. Sprouse*, 325 S.C. 275, 282, 478 S.E.2d 871, 875 (Ct. App. 1996) (quoting *Bradley v. State*, 316 S.C. 255, 257, 449 S.E.2d 492, 493-94 (1994)).

"Appellate review of whether a person is in custody is confined to a determination of whether the ruling by the trial judge is supported by the record." *State v. Evans*, 354 S.C. 579, 583, 582 S.E.2d 407, 409 (2003). When it is debatable whether a reasonable person would believe himself or herself to be in custody when a statement

was made, the trial court's ruling should stand.  *State v. Navy*, 386 S.C. 294, 301, 688 S.E.2d 838, 841 (2010).

Young was questioned in public, unrestrained, in front of his work truck and flanked by co-workers.  Although an officer had instructed Young and his co-workers to remain in the area so that police could speak to them, nearly every civilian in the neighborhood had their freedom of movement restricted either by the crime scene tape or by interactions with first responders.  While Sulser testified that Young wouldn't have been free to leave the scene at the time Sulser approached him, the trial court correctly determined that this is irrelevant to determining whether Young was in custody.  The standard is an objective, reasonable person standard, and the subjective belief of the officer is not a consideration.  *See Berkemer v. McCarty*, 468 U.S. 420, 442 (1984).

After a careful review of the body camera footage, we find the trial court correctly characterized Sulser as a first responder trying to quickly figure out what happened rather than an investigator utilizing trained interrogation tactics.  As the Supreme Court stated in *Miranda*, "[g]eneral on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process" is distinct from the coercive settings outlined in *Miranda*, as "[i]n such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present."  384 U.S. at 477-78.  *See also State v. Easler*, 327 S.C. 121, 128-29, 489 S.E.2d 617, 621 (1997), *overruled on other grounds by State v. Greene*, 423 S.C. 263, 814 S.E.2d 496 (2018) (holding police questioning of suspect who left the scene of a deadly car accident was not custodial interrogation); *State v. Morgan*, 282 S.C. 409, 411-12, 319 S.E.2d 335, 336-37 (1984) (holding  a routine investigation into the cause of a traffic accident that had recently occurred did not rise to the level of custodial interrogation); *Barksdale*, 433 S.C. at 335-36, 857 S.E.2d at 563 (holding defendant was not in custody when detained by police and questioned on the roadside following a traffic accident); *State v. Kerr*, 330 S.C. 132, 146, 498 S.E.2d 212, 219 (Ct. App. 1998) (holding policeman conducting a routine investigation of a traffic accident on the roadside had not placed defendant in custody).

The record supports the trial court's ruling that Young was not in custody at the time he admitted to stabbing the victim, and therefore was not subject to custodial interrogation.  We consequently find the trial court properly admitted the body camera footage.

**B.  Post-*Miranda* Statements**

Young further argues that the trial court improperly admitted the statements he made to police post-*Miranda*, as those statements were tainted by the prior unwarned statements. We disagree. Because we find that Young was not in custody at the time he made pre-*Miranda* admissions to law enforcement, we also find that Young's post-*Miranda* statements were not tainted by the prior questioning.

## C. Sentencing

The plain language of section 16-23-490(A) of the South Carolina Code (2015) states that the mandatory five-year sentence for possession of a weapon during the commission of a violent crime does not apply in cases where a person has received a life sentence without the possibility of parole. The State in this case concedes that the trial court erred in imposing the five-year sentence.

We vacate Young's five-year sentence for possession of a weapon during a violent crime. Although issues not raised and ruled on at trial are generally not to be considered on appeal, appellate courts have corrected unpreserved but improper sentences in the interest of judicial economy. *State v. Bonner*, 400 S.C. 561, 564, 735 S.E.2d 525, 526 (Ct. App. 2012). *See also State v. Johnston*, 333 S.C. 459, 463-64, 510 S.E.2d 423, 425 (1999) (remanding for resentencing in a case which "present[ed] the exceptional circumstance in which the State has conceded in its briefs and oral argument that the trial court committed error by imposing an excessive sentence."); *State v. Sledge*, 428 S.C. 40, 59, 832 S.E.2d 633, 644 (Ct. App. 2019) (vacating defendant's five-year sentence for the same conviction despite lack of preservation); *State v. Vick*, 384 S.C. 189, 202-03, 682 S.E.2d 275, 281-82 (Ct. App. 2009) (vacating the improper kidnapping sentence where the State conceded the trial court erred in sentencing defendant for kidnapping where he was also convicted of murder).

## CONCLUSION

For the reasons outlined above, we affirm the court's admission of Young's statements before and after being informed of his *Miranda* rights. We also vacate his five-year sentence for possession of a weapon during the commission of a violent crime.

**AFFIRMED IN PART, VACATED IN PART.**

**THOMAS, HEWITT, and CURTIS, JJ., concur.**