## 21113

Lawson W. HAMILTON, Jr., Pratt Mining Company, and Xcello Corporation, Respondents, v. CCM, INC., and Maryland National Bank, Appellants.

(263 S. E. (2d) 378)

*Earl D. Hewlette, Jr.* of *Boyd, Knowlton, Tate & Finlay,* Columbia, *for appellants.*

*James M. Herring,* Hilton Head Island; and *P. Thomas Denny,* Charleston, W. Va., *for respondents.*

January 10, 1980.

RHODES, Justice:

This is an appeal from an order of the lower court permanently enjoining appellants CCM, Inc. (CCM) and its

mortgagee, Maryland National Bank, from constructing or erecting any improvements on certain real estate owned by CCM on Hilton Head Island, the action having been brought by respondents as co-owners of real estate situate in proximity to the area in dispute. We reverse.

Although numerous plats have been offered into evidence, the outcome of this litigation is largely controlled by the construction given an instrument referred to as the Harbour Town Townhouse Plat. The area in dispute, although designated as "B-2" on a subsequent plat, is neither designated on nor within the surveyed portion of the Harbour Town Townhouse Plat, but lies within a space outside the perimeter of the surveyed portion of the plat, depicted thereon as a total blank. Parcel B-2, as specifically shown on the subsequent plat, consists of 0.38 acres of land and was sold to CCM for $181,000. The lower court determined that the disputed area was clearly depicted on the Harbour Town Townhouse Plat to be an open space easement, upon which no construction could take place. The development of the disputed area was thereupon enjoined by order of the lower court, as noted previously.

The disputed property is located in the Harbour Town area of Hilton Head Island and is generally referred to as the area situated between the Harbour Town cemetery and the eighteenth fairway of the Harbour Town Golf Course. CCM purchased this disputed parcel of land from The Travelers Insurance Company (Travelers) on September 27, 1976 and subsequently mortgaged it to the Maryland National Bank for the purpose of securing a construction loan to CCM for the development of an eight-unit condominium.

Respondents are co-owners of a townhouse located approximately ninety feet from Parcel B-2 on Lots 1, 2, 3, and 4 of Block A of the Harbour Town Townhouse Plat and separated from the area in dispute by an intervening unimproved area. This townhouse was purchased by respondents on April 1, 1976 from Joab and Katherine Dowling by ref-

erence to the Harbour Town Townhouse Plat, which was dated June 25, 1970 and recorded June 29, 1970.

The common grantor of CCM's and respondents' real property was the Lighthouse Beach Company, a limited partnership composed of Travelers, The Prospect Company, and the Sea Pines Management Company (Sea Pines). Lighthouse Beach Company had, previous to the purchase by CCM, developed a subdivision of single family lots within the surveyed area of the Harbour Town Townhouse Plat.

Subsequent to the development of the Harbour Town Townhouse subdivision, Lighthouse Beach Company continued to retain ownership of other land in the Harbour Town area, including the area embraced by Parcel B-2. In 1975 Lighthouse Beach Company was dissolved and its properties were divided between Sea Pines and Travelers through the execution of two deeds. Each of these deeds conveyed numerous parcels of land, although neither deed made specific reference to Parcel B-2.

It was thereafter discovered that Parcel B-2 had not been specifically conveyed to either Travelers or Sea Pines but that the title to a tract of land which included Parcel B-2 had in fact passed by virtue of a residual or catchall clause contained in the dissolution deed from Lighthouse Beach Company to Sea Pines. Upon this discovery, this tract of land was conveyed in 1976 by Sea Pines to Travelers. Travelers then conveyed the property, including Parcel B-2, to CCM.

The principal issue presented on this appeal is whether an open space easement restricting the use of all or part of Parcel B-2 exists. This basic issue will be treated under three topics:

(1) whether the Harbour Town Townhouse Plat clearly and without ambiguity creates an open space easement over the disputed area;

(2) whether an implied open space easement was created by the intent of the common grantor—developer as demonstrated by the surrounding circumstances;

(3) whether a reciprocal negative easement permanently restricting the development of Parcel B-2 was created by the common grantor—developer, Lighthouse Beach Company.

The first question addressed is the validity of the lower court finding that an inspection of the Harbour Town Townhouse Plat mandates an interpretation that an open space easement was "clearly" designated as covering the area in dispute. It is upon this finding that the lower court primarily predicated its ruling. We have carefully examined the plat and are of the opinion that it does not support such an unequivocal finding. The plat is patently ambiguous in this respect. Indeed, one of respondents' witnesses, David Mellichamp, testified that the Harbour Town Townhouse Plat did not affect Parcel B-2, while another of respondents' witnesses, Joab Dowling, stated that the plat was ambiguous. The experts who testified were divided on the question of whether the plat evidenced an intent to restrict the use of Parcel B-2.

It being impractical to print the plat as a part of this opinion, it is difficult without such a reference to articulate the many and various details shown on it that lead us to the conclusion that the plat relative to an open space easement over Parcel B-2 is ambiguous. The plat subdivides the area into seventy-six townhouse lots grouped into three irregular blocks, together with walkways, access roads, and other easements. Each of the lots is surveyed in detail with distances and courses platted. The above-described subdivision area is enclosed by a surveyed perimeter line giving courses and distances and is bounded generally on the north by Lighthouse Lane, a cemetery, and an area left entirely blank on the plat; east by Mizzen Mast Lane; south by the seventeenth fairway of the Harbour Town Golf Course and an area marked as "open space"; and, on the west by a blank area separating the subdivision from the eighteenth fairway of said golf course. Separating this property from each of the two fairways is a sketched, unsurveyed, wavy line,[1] which

---

[1] The expert witness generally agreed that this symbol signified a tree line.

the lower court held to be the outside boundary of an open space easement. The area in dispute is located on the northwest unsurveyed portion of the plat between the cemetery to the east and the eighteenth fairway to the west.

A restriction on the use of property must be created in express terms or by plain and unmistakable implication, *Edwards v. Surratt,* 228 S. C. 512, 90 S. E. (2d) 906 (1956), and all such restrictions are to be strictly construed, with all doubts resolved in favor of the free use of the property. *Davey v. Artistic Builders, Inc.,* 263 S. C. 431, 211 S. E. (2d) 235 (1975). It has also been stated by this court that in the interpretation of maps and plats intention will not be inferred from symbols of uncertain meaning or from fanciful adornments on the plat and vacant areas will not of themselves be taken as dedicated. *Antonakas v. Chamber of Commerce,* 130 S. C. 215, 126 S. E. 35 (1924). The words "open space" do not appear on the plat in the area where Parcel B-2 would be located or in proximity thereto. While the words "open space" appear three times on the plat, the nearest such designation is separated from Parcel B-2 by an intervening row of townhouse lots. The lower court held, as noted above, that a proper construction of the Harbour Town Townhouse Plat, as a whole, would lead to a determination that areas within the wavy treeline symbol would be subject to an open space easement. Appellant disputes this conclusion, arguing that the tree lines were not surveyed and that the items depicted on the plat outside the line of the overall traverse, such as the tree lines, should not be considered in the interpretation of the plat or in considering the designation of the use of such areas.

Despite the reasoning of the lower court and respondents' contentions to the contrary, the Harbour Town Townhouse Plat is, as previously stated, obviously ambiguous. This court held in the case of *Davey v. Artistic Builders, Inc., supra,* that where the language of a restrictive covenant is equally capable of two or more constructions, that construction will be adopted which least restricts the

property. The same reasoning would apply to a restriction, such as an alleged easement shown on a plat incorporated by a deed, since restrictions on the use of real estate are to be strictly construed, with all doubts resolved in favor of the free use of the property. This role of strict construction is subject to the provision that it is not applicable so as to defeat the plain and obvious purpose of the instrument. *Id.* Since it is our determination that there is no plain and obvious easement shown by the plat, the above rule of strict construction is clearly applicable in this instance so as to resolve the ambiguity of the plat in favor of appellants and thereby defeat the contentions that the plat alone creates the easement.

Circumstances surrounding the origin of an alleged restriction may also be considered in construing that restriction. *Nance v. Waldrop,* 258 S. C. 69, 187 S. E. (2d) 226 (1972). Likewise, the intent of the parties as shown by all the facts and circumstances under which a conveyance was made may give rise to an easement by implication. 25 Am. Jur. (2d), Easements and Licenses, § 24. The lower court found as a supplemental ground [2] for its holding that, as shown by the objective manifestations of its intent, there was a dedication [3] by the developer of the disputed land as an open space area.

Evidence was presented by appellants demonstrating that the developer at all pertinent times had reserved a decision about the use of the area in dispute. Illustrative of such evidence is the original sepia of the Harbour

[2] The lower court apparently enunciated two supplemental grounds for its determination that here was an open space easement: first, that it was the intent of the common grantor to dedicate the disputed land as an open space easement; second, although it is not entirely clear from the lower court order, that a negative equitable easement existed. We now discuss these suplemental or additional sustaining grounds.

[3] A "dedication" is defined as the intentional appropriation of land or an easement therein, for some proper public use. *Dedby Heights, Inc. v. Gantt Water and Sewer District,* 237 S. C. 144, 116 S. E. (2d) 13 (1960). In this instance the "dedication" is to the use of the lot owners in the Townhouse subdivision. A dedication to private use is nothing more than an easement. *Briarcliffe Acres v. Briarcliffe Realty Co., Inc.,* 262 S. C. 559, 206 S. E. (2d) 886 (1974).

Town Townhouse Plat, which demonstrates that the original designation of the disputed area as "open space" was subsequently erased prior to recording,[4] and the Sea Pines Plantation Master Plan, which contains a legend indicating that the plan is not to be relied on as an absolute representation of the future development of Harbour Town or other areas of Sea Pines Plantation.

Contrary indications offered by respondents and relied upon by the lower court in making its determination included a number of public record items and testimony by various lot owners of a reliance upon a general impression that the area in dispute was at all relevant times "open space."

Respondents emphasize as being significant the fact that the disputed property was conveyed to Sea Pines by virtue of a dissolution deed of the Lighthouse Beach Company. It is conceded by appellant that the intent of the partners to the Lighthouse Beach Company upon dissolution was to convey all or most of the marketable property in the Harbour Town area to Travelers and to convey to Sea Pines those properties needed to operate the resort, including common areas such as open space easements. Although the initial deed granted the disputed property to Sea Pines, lending credence to the belief that it was considered by the parties to be a common area, the record clearly reflects that it was occasioned by inadvertence or a draftsman's error and rectified by the execution of another deed when discovered.

As indicative of intent, the lower court seems to have placed reliance on the fact that Lighthouse did not specifically plat the disputed property at the time the area was subdivided by the Harbour Town Townhouse Plat. We do not feel that this fact demonstrates an intent to forego future de-

---

[4] The sepia was introduced as an exhibit and, when held to the light, unquestionably demonstrates that the are in question was originally impressed with the words "open space". The engineer who drafted the sepia testified that they were erased before the plat was recorded at the express direction of the owner's agent who stated to him that the use to which the area would be put had not yet been determined.

velopment of that property, as we are unaware of any requirement of law imposing upon a land owner the duty to affirmatively reserve the right to develop portions of his land at a later date.

The lower court in making its decision also relied upon testimony indicating a general impression, based upon statements by sales representatives of the developer, that the disputed land was "open space." Such testimony was weakened by its vague nature and contradictory testimony to the effect that the representaions made were only concerned with the area immediately adjacent to the property of respondents, which has in fact been subsequently platted as being "open which were not a part of the printed form but were added space", and did not extend to the disputed area.

In an action in equity, tried by a lower court judge alone, as is true in this instance, this court has jurisdiction to find facts in accordance with its views of the preponderance of the evidence. *Townes Associates, Ltd. v. City of Greenville,* 266 S. C. 81, 221 S. E. (2d) 773 (1976). With this principle in mind, it is the determination of this court that, on the basis of the testimony and evidence presented, it was not the intent of the developers that an open area easement be created.

As a final supplemental ground for its holding, the lower court found that a reciprocal negative easement concerning the Townhouse subdivision and the area in dispute had been created. It is well settled in this state that where the owner of a tract of land subdivides it and sells the distinct parcels thereto to separate grantees, imposing restrictions on their use pursuant to a general plan of development or improvement, such restrictions may be enforced by any grantee against another grantee. *McDonald v. Welborn,* 220 S. C. 10, 66 S. E. (2d) 327 (1951).

As a reciprocal negative easement arises by implication, such implication must be "plain and unmistakable". *Edwards v. Surratt, supra.* This is in accord

with the general principle that "restrictive covenants are to be construed most strictly against the grantor and persons seeking to enforce them, and liberally in favor of the grantee, all doubts being resolved in favor of [the] free use of property and against restriction." *Bomar v. Echols,* 270 S. C. 676 at 680, 244 S. E. (2d) 308 at 310 (1978), *quoting Edwards v. Surratt, supra.* As it is our determination that neither the public documents presented in evidence nor the circumstances surrounding the conveyance give rise to such a "plain and unmistakable" implication, there can be no reciprocal negative easement restricting the use of the disputed land.

Based upon the foregoing determinations, the finding of the lower court is reversed.

Reversed.

LEWIS, C. J., NESS and GREGORY, JJ., and JOSEPH R. Moss, Acting Associate Justice, concur.