2346

HARBISON COMMUNITY ASSOCIATION, INC., Appellant v. George and Jane MUELLER, Respondents.

(459 S.E. (2d) 860)

Court of Appeals

*Edward M. Woodward, Jr.* and *Richard M. Unger, Woodward, Leventis, Unger, Daves, Herndon & Cothran;* and *Malry L. Bryan,* Columbia, *for appellant.*

*S. Jahue Moore* and *J. Mark Taylor, Kirkland, Wilson, Moore, Allen, Deneen & Taylor,* West Columbia, *for respondents.*

*Amici Curiae: James C. Harrison, Jr., Kenneth E. Ormand, Jr.,* and *Mary P. Connell,* on behalf of *Home Builders Association of Greater Columbia; Roddy M. Jordan* and *Stephen A. Spitz,* on behalf of *Palmetto Land Title Association,* Columbia.

Heard Apr. 4, 1995.

Decided May 30, 1995; Reh. Den. Aug. 17, 1995.

HOWARD, Judge:

This is an action for collection of assessments on property owned by the respondents, George and Jane Mueller. The magistrate entered judgment for the appellant, Harbison Community Association, Inc. (the Association). On appeal, the circuit court reversed the magistrate's order, finding that the covenant to pay assessments was personal and did not run

with the land, and thereby precluded the Association from collecting the assessments. The Association appeals. We reverse the circuit court.[1]

In 1975 the Harbison Subdivision was organized as part of a Federal Department of Housing and Urban Development "New Town" program. The Harbison Subdivision, which straddles Richland and Lexington counties, is subject to a Declaration of Covenants, Restrictions, Easements, Charges and Liens for Harbison, South Carolina (the 1975 Declaration), which created the Association to maintain the common areas and enforce the Declaration. The 1975 Declaration contained a provision which allowed the Association to assess annual fees to fund the operation of the Association and the design, acquisition, improvement and maintenance of the common areas. The 1975 Declaration was amended in 1983, after the federal New Town program was abandoned. The amended Declaration was recorded in Richland and Lexington counties.

The Harbison Group, the developers of the Harbison Subdivision, subsequently conveyed the subdivision to the J.C. Roy Company. The deed to the J.C. Roy Company was filed in April of 1986, and contained a provision stating the conveyance was subject to the 1975 Declaration, as amended, and subject to a lien for annual assessments levied by the Association pursuant to the Declaration. The Muellers purchased a single-family residence in the Harbison Subdivision from the J.C. Roy Company and received a deed filed July 10, 1986 with the Lexington County RMC. The Muellers' deed did not reference the Declaration or the annual assessments, but was subject "to easements and restrictions of record and otherwise affecting the property." Mr. Mueller admitted he had read the reference to the Declaration in the deed from the Harbison Group to the J.C. Roy Company. The Muellers failed to pay the annual assessments throughout their ownership. The Association obtained judgment for the assessments from the magistrate against the Muellers; however, the circuit court reversed the magistrate because it found the covenant

---

[1] Because we reverse the circuit court order on the grounds stated below, we decline to address the Association's argument that the Muellers' Notice of Appeal from the magistrate to the circuit court lacked particularity and should have been dismissed.

to pay the assessment did not run with the land and therefore did not apply to the Muellers.

Covenants requiring property owners to pay fees for improvements, maintenance or other services to a homeowners association run with the land. *First Fed. Sav. & Loan Ass'n v. Bailey*, 316 S.C. 350, 450 S.E. (2d) 77 (Ct. App. 1994). Covenants to pay assessments have been held to be merely personal where the assessments were for very limited purposes, and the assessments had no beneficial effect on the value of the homeowners' properties. *See Raintree Corp. v. Rowe*, 38 N.C. App. 664, 248 S.E. (2d) 904 (1978). In the instant case, the Harbison assessments pay for maintenance of common areas in the community, including parks, walkways, landscaping, an athletic center, and tennis courts. These common areas enhance the value of all of the properties in the community. *See, e.g., Four Seasons Homeowners Ass'n v. Sellers*, 62 N.C. App. 205, 302 S.E. (2d) 848 (a covenant to pay assessments to finance recreational facilities in a subdivision touches and concerns every homeowner's lot in the subdivision even though the facilities are not adjacent to each lot), *cert. denied*, 309 N.C. 461, 307 S.E. (2d) 364 (1983); *Neponsit Property Owners' Ass'n v. Emigrant Indus. Sav. Bank*, 278 N.Y. 248, 15 N.E. (2d) 793 (1938) (a covenant to pay assessments touches and concerns the land if the money is used to maintain common areas, thus providing a benefit to the landowner).

For a covenant to run with the land, there must also be an indication that the parties intended for the covenant to run with the land. *Charping v. J.P. Scurry & Co.*, 296 S.C. 312, 372 S.E. (2d) 120 (Ct. App. 1988). The language of the Harbison covenant for assessments clearly shows it was intended to run with the land. The Declaration, Article IV, § 401 provides as follows:

> [E]ach Owner, jointly and severally, for himself, his heirs, distributees, legal representatives, successors, and assigns, by acceptance of a Deed or other conveyance for any Lot which is Assessable Property, whether or not the covenants contained herein shall be expressed in any such Deed . . . hereby covenants and agrees:
> (a) that he will pay to the Association the Assessments which may or shall be levied by the Association. . . .

Furthermore, the Introduction to the Declaration, which is addressed to all property owners, states, "The Declaration runs with the title to all property in Harbison and establishes a common set of rights and obligations for all property owners. . . . [Y]ou must pay the Association annual assessments to finance its operation and services and to finance and maintain the Common Property." Thus, we find the Harbison Declaration's assessment provision is a covenant which runs with the land, and the circuit court erred, as a matter of law, in finding otherwise.

The circuit court also reversed the magistrate because the Declaration's fee assessment provisions were not recited in the Muellers' deed, and therefore the Muellers were not bound by them. This was an error. A covenant is enforceable against a subsequent grantee, even if not in the grantee's deed, if the grantee has actual or constructive notice of the covenant. 20 Am. Jur. (2d) *Covenants, Conditions, and Restrictions* § 26 (1965). A homeowner is charged with constructive notice of any restriction properly recorded within the chain of title. *Carolina Land Co. v. Bland*, 265 S.C. 98, 217 S.E. (2d) 16 (1975). The Declaration was recorded and noted in the J.C. Roy Company deed, within the Muellers' chain of title. Thus, the Muellers had constructive notice of the Declaration. Moreover, Mr. Mueller testified he had actual notice of the Declaration. Accordingly, the Muellers are bound by the terms of the Declaration, and the circuit court erred, as a matter of law, in finding the Muellers not bound by the covenant because it was not in their deed.

We have considered the Muellers' additional sustaining grounds and find them to be manifestly without merit. For the foregoing reasons, the circuit court's order is

Reversed.

HOWELL, C.J., and GOOLSBY, J., concur.