THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
 Carolyn Songer Austin, Respondent,
 v.
 Town of Hilton Head Island, South Carolina; W.J. Enterprises, Inc.; H.D.S. Builders, L.L.C.; Barb Loebig; and National Bank of Commerce, Defendants,
 Of whom W.J. Enterprises, Inc.; H.D.S. Builders, L.L.C.; Barb Loebig; and National Bank of Commerce are the Appellants.
 
 
 

Appeal from Beaufort County
 Thomas Kemmerlin, Special Circuit Court Judge

Unpublished Opinion No.  2007-UP-172
Heard March 7, 2007  Filed April 17, 2007

REVERSED

 
 
 
 Drew A. Laughlin, of Hilton Head Island and Stephen A. Spitz, both of Charleston, for Appellants.
 M. Adam Gess, of Beaufort, Mark Weston Hardee, of Columbia and Robert E. Austin, Jr., of Leesburg, Florida, for Respondent.
 
 
 

PER CURIAM:  A special referee granted Carolyn Songer Austins request for a permanent injunction in this action involving the application of restrictive covenants.  W.J. Enterprises, Inc., H.D.S. Builders, L.L.C., Barb Loebig, and the National Bank of Commerce (collectively, Appellants) appeal the ruling.  We reverse. 
FACTS
Austin owns Lot 23 in Hilton Head Beach Subdivision No. 2 (the Subdivision).  Appellants either own or have an interest in Lot 18.[1]  Austin alleges Appellants subdivided their lot into two lots and built homes upon the two lots in violation of restrictive covenants applicable to the Subdivision. 
The Subdivision is located on oceanfront property on Hilton Head Island, South Carolina.  A plat of the Subdivision recorded on July 7, 1953, shows J Street (now known as Jacana Street) separates Lots 18 and 23.  J Street runs from Baynard Avenue (now called North Forest Beach Drive) to the seaward boundary of the Subdivision.    
The Hilton Head Company owned and developed the Subdivision, but during the 1950s conveyed some of its land to the Hilton Head Land Company, a partnership.  
In 1954, the Hilton Head Company executed and recorded a declaration providing that the Hilton Head Company, its successors and assigns shall hold a portion of the property between the high water mark and the front lot line of the lots in the Subdivision  commonly referred to as strand property  in Trust . . . for the use and benefit of all present and future property owners of any lot or lots in Hilton Head Beach Subdivision No. 2.    
In 1956, the Hilton Head Company, with the agreement of the Hilton Head Land Company, adopted a set of restrictions applicable to the Subdivision (the 1956 Restrictions).  They established setback lines and procedures for subdividing lots and changing boundary lines.  The 1956 Restrictions provide in pertinent part:

 
 I.  RESIDENTIAL AREAS  That portion of the lands of The Hilton Head Company situated on Hilton Head Island, State of South Carolina, referred to as The Hilton Head Beach Subdivisions . . . shall be subject to the following covenants running with the land.
 1.  All lots . . . shall be used for residential purposes exclusively.  No structur[e]s shall be erected, altered, placed or permitted to remain on any lot, other than one (1) detached single family dwelling . . . .    
 . . . .
 3.  No building shall be located on any lot nearer than twenty (20) feet to the front line, nor nearer than ten (10) feet to any adjacent streetline, nor nearer than five (5) feet to any lot line.
 . . . .
 10.  No lot shall be subdivided without the consent of The Hilton Head Company, or The Hilton Head Land Company (if title was derived from the later [sic] company)[,] their successors or assigns; provided, however, that no lot may be so reduced to a size less than 8,000 square feet, or have a frontage less than 60 feet in length, without the written consent of both The Hilton Head Company and The Hilton Head Land Company.  (Emphasis added.)     
 

The Hilton Head Land Company subsequently ceased operations when the partnership disbanded around 1960.  It no longer owns property on Hilton Head Island.  
Austins lot lies across Jacana Street from Lot 18.  A replatting of Lot 18 in 1997 included a portion of the strand property[2] and a replatting of Lot 18 in 2002 subdivided the lot into Lots 18A and 18B.  Lot 18, as originally platted, was 100 feet wide.  The new lots each contain frontage of less than sixty feet, one being forty-five feet wide and the other fifty-five feet wide.     
By a memorandum dated July 31, 2002, W.J. Enterprises obtained the consent of Hilton Head Beach Subdivision No. 2 Assets Holding Corporation (Assets Holding), the successor to the Hilton Head Company, to subdivide Lot 18.        
In September 2002, Austin filed a complaint against the Town of Hilton Head Island, seeking an injunction to set aside the Towns approval of the subdivision of Lot 18 and prohibiting construction closer than twenty feet to the front line of Lot 18.  She later amended her complaint, adding Appellants as parties.  In her prayer for relief, so far as is now relevant here in view of the dismissal of the Town from the action, she requested an injunction (a) prohibiting the subdivision of Lot 18 and the incorporation of the strand property into Lot 18; and (b) prohibiting construction of a building closer than twenty feet to the front line of Lot 18.  
The circuit court transferred the case to a special referee, who held a hearing in April 2003.  In his order, the referee essentially determined the homes were in violation of the 1956 Restrictions because Lot 18 was subdivided into smaller lots with less than sixty feet of frontage without proper authorization and the homes violated both the front and streetline setback provisions.  
The referee granted relief to Austin, issuing an injunction prohibiting (1) the subdivision of Lot 18 into sublots having a frontage of less than sixty feet; (2) the incorporation of the strand property into Lot 18; and (3) the construction of a building nearer than twenty feet to the original front line of Lot 18 and nearer than ten feet to the streetline of Jacana Street.  Moreover, the referee ruled Appellants shall . . . remove any and all structures or improvements from Lot 18 that violate the restrictive covenants applicable to Lot 18.    
STANDARD OF REVIEW
An action to enforce restrictive covenants by injunction is in equity.  Gibbs v. Kimbrell, 311 S.C. 261, 267, 428 S.E.2d 725, 729 (Ct. App. 1993).  In equitable actions, the appellate court may review the record and make findings of fact in accordance with its own view of the preponderance of the evidence.  Grosshuesch v. Cramer, 367 S.C. 1, 4, 623 S.E.2d 833, 834 (2005).  Under this broad scope of review, however, the appellate court is not required to ignore the findings of the referee, who is in a better position to evaluate the credibility of the witnesses.  See, e.g., Anderson v. Buonforte, 365 S.C. 482, 487, 617 S.E.2d 750, 753 (Ct. App. 2005); Seabrook Island Prop. Owners Assn v. Marshland Trust, Inc., 358 S.C. 655, 661, 596 S.E.2d 380, 383 (Ct. App. 2004).
The remedy of injunction is a drastic one and should be cautiously applied only when legal rights are unlawfully invaded or legal duties are willfully or wantonly neglected.  LeFurgy v. Long Cove Club Owners Assn, 313 S.C. 555, 558, 443 S.E.2d 577, 578 (Ct. App. 1994).
LAW/ANALYSIS
I.  Subdivision of Lot
The referee ruled Appellants failed to comply with the 1956 Restrictions, in part, because they did not obtain the consent of the Hilton Head Land Company to subdivide Lot 18 into two lots with frontages of less than sixty feet.  Consequently, the referee prohibited Appellants from subdividing Lot 18.  On appeal, Appellants contend the issue of obtaining the consent of the Hilton Head Land Company was not properly before the referee as it was never pled in Austins amended complaint and there was no notice to Appellants that this was to be a contested issue.  
In her amended complaint, Austin did not assert the approval of the Hilton Head Land Company was required to subdivide Lot 18.  Rather, she expressly alleged Property Research Holding, Inc. was the successor of the Hilton Head Company, it had the exclusive right to approve the subdivision of Lot 18, and it had not consented to the subdivision of the lot.  (Emphasis added.)      
During the hearing before the referee, Frank Mead, a principal in Assets Holding, testified Assets Holding, not Property Research, is actually the successor corporation in this matter, and Assets Holding had given Appellants written approval for the subdivision of the property.  Assets Holding had acquired the interests of Property Research.  
The referee, nevertheless, found Appellants had violated the 1956 Restrictions because they did not obtain the approval of the Hilton Head Land Company for the subdivision of Lot 18.  This finding was based on the provision in the 1956 Restrictions stating a lot could be subdivided to have a frontage of less than sixty feet if approved in writing by both the Hilton Head Company and the Hilton Head Land Company.  
We find the issue of whether the Hilton Head Land Company had given its approval and whether the lack of consent would constitute a violation of the 1956 Restrictions was not properly before the referee.  Although we recognize issues may be deemed tried by consent and a party may move to amend the pleadings to conform to the evidence under Rule 15(b), SCRCP, we do not believe the current appeal presents an appropriate case for application of this rule.  
Austin never requested, before, during, or even after the hearing in this matter, an amendment of her complaint to allege a violation of the 1956 Restrictions because Appellants did not obtain the approval of the Hilton Head Land Company to subdivide Lot 18.  Although Austins counsel did ask Mead during the hearing whether the Hilton Head Land Company had approved the subdividing of Lot 18, Mead simply responded, without contradiction, that the Hilton Head Land Company was a partnership that no longer existed.        
There is no indication in the record that Appellants or even Austin, for that matter, ever recognized that Austin was abandoning or changing her original argument on this point, i.e., that Property Research had the exclusive right to approve any lot changes.  At the end of the hearing, Austins counsel started to move to amend Austins pleadings to conform to the evidence, but when an objection was made by opposing counsel that Austin needed to specify how the pleadings were to be altered, Austins counsel could not state in what way there was a variance from the pleadings.  
The referee commented he was also unaware of any variance.  The referee, therefore, declined to rule on the motion, saying he would take it under advisement in case you ever need it, but Austin never renewed the motion or requested a ruling upon it.  It is important also that the referee never found the issue was tried by consent before addressing it in his order, whereupon Appellants made a post-trial motion to alter or amend the judgment.  The motion was made on the basis that, among other things, the issue was not pled and the only successor corporation is Assets Holding, as the Hilton Head Company has not existed for some time.
We think that, considering all the circumstances, it would be prejudicial to Appellants and contrary to the record to conclude this issue was fully litigated with the knowledge of all parties.  See Williams v. Addison, 314 S.C. 35, 38, 443 S.E.2d 582, 584 (Ct. App. 1994) ([T]his Court will not find implied consent to try an issue if all of the parties did not recognize it as an issue during trial, even though there is evidence in the recordintroduced as relevant to some other issuewhich would support the amendment.  This is so because the opposing party may not be conscious of the relevance of the evidence to issues not raised by the pleadings if the relevance is not otherwise made clear. (citation omitted)).  We therefore reverse the referees finding that Appellants violated the 1956 Restrictions based on the lack of consent of the long-defunct Hilton Head Land Company.
II.  Setbacks
The referee found Appellants violated the 1956 Restrictions in two respects: (1) by building within twenty feet of the front line of the property boundary; and (2) by building within ten feet of Jacana Street.  Appellants contend the referee erred in finding they violated these setback provisions.  
As for the twenty-foot setback, we agree with Appellants that there is no evidence in the record to support this finding.  There were only two witnesses who testified at the hearing  Austin and Mead, a principal of Assets Holding.  Although Austin alleged in her amended complaint that the homes violated the twenty-foot setback provision, at the hearing Austin was unable to testify as to the position of the homes that had been placed on what was formerly Lot 18.  Mead, in turn, stated he could only speculate about the distance, but ultimately testified that he believed the homes were in compliance with the twenty-foot setback.  In concluding the homes violated the twenty-foot setback, the referee did not make any findings regarding the position of the homes and cited no measurements regarding the distances of any structures from the setback lines.  Thus, we reverse the referees finding that Appellants were in violation of the twenty-foot setback provision.
As for the ten-foot setback, Austin did not plead a violation of this particular restriction in her amended complaint, she did not move to amend her pleadings to assert a violation of this provision, and the referee never made a finding that the issue was tried by consent before ruling Appellants were in violation of the ten-foot streetline setback.  Austin suggests the issue was tried by consent because a witness was asked at the hearing whether any structure on Lot 18 was located within ten feet of Jacana Street.
Appellants moved to alter or amend the referees order to the extent that he found the ten-foot streetline setback provision had been violated because Austin had not pled this issue in the amended complaint.  As in the case of the issue relating to the alleged failure by Appellants to obtain the consent of the Hilton Head Land Company where the pleadings did not put Appellants on notice that the issue was to be litigated, we likewise hold and for the same reasons determine it would be unfair under the circumstances to conclude an issue regarding whether Appellants violated the ten-foot street setback restriction was tried by consent.  This is especially appropriate since the referee did not make this determination when asked to do so and, had he done so, Appellants would then have had an opportunity to offer evidence on the issue.  We recognize Austin attached a copy of the 1956 Restrictions to the amended complaint, introduced into evidence without objection a copy thereof, and questioned a witness, without objection, about whether any structure on Lot 18 was located within ten feet of Jacana Street; however, without more, these actions alone, in our view, did not suffice to place Appellants on notice that Austin was alleging a violation of the restriction relating to the ten-foot streetline setback.  See Williams, 314 S.C. at 38, 443 S.E.2d at 584.
In any event, the record does not support a finding that Appellants violated the ten-foot streetline setback.  Austins testimony on this point was generally that she thought Appellants built too close to Jacana Street.  She acknowledged, however, that she had not been out to the property to take any measurements.[3]  Further, although Austin claims Meads testimony provides evidence of a violation, his testimony, as we understand it, does not do so.  Mead testified the construction did not violate any applicable setback provisions because the structures were less than ten feet . . . from a park area . . . [and] not from a street line.[4]  Accordingly, we reverse the referees finding that Austin established Appellants were in violation of the ten-foot setback.  
REVERSED.[5]
HEARN, C.J., GOOLSBY and STILWELL, JJ., concur.

[1]  Austin alleged in her amended complaint that W.J. Enterprises owned Lot 18, H.D.S. Builders received a building permit for the construction of a house on Lot 18, Loebig contracted to purchase a portion of Lot 18, and the National Bank of Commerce held a mortgage on all or part of Lot 18.  
[2]  Appellants trace whatever interest they hold to the portion of the strand property that was incorporated into Lot 18 to a series of transactions that originated with the Hilton Head Company and involved transfers to Property Research, to Assets Holding, to D.H. and Associates, and finally to Appellants.  
[3]  We recognize Austin also asserted an as-built survey that she received from the Town would show Appellants built too close to the line; however, she then stated she was not certain of the measurements.  Moreover, she failed to bring the survey with her to submit as evidence at the hearing.    
[4]  In an affidavit dated November 6, 2002, Mead similarly asserted the homes on what was formerly Lot 18 did not violate any of the applicable restrictions.
[5] Based on our decision to reverse, we need not address Appellants remaining arguments.  In particular, we do not address the referees ruling regarding the incorporation of the strand property into Lot 18.  Appellants maintain that if we agree there is no violation of the front-lot, setback line, this court need not address the legal status of the strand property.  Apparently, Austin agrees with this assessment, being she does not contradict this statement anywhere in her Respondents Brief.  Cf. Rule 208(a)(4), SCACR (Upon the failure of respondent to timely file a brief, the appellate court may take such action as it deems proper.).  Suffice it to say, Austin failed to show Appellants encroached upon the strand property.