686 S.E.2d 194

**TOO TACKY PARTNERSHIP, Appellant,**

v.

**SOUTH CAROLINA DEPARTMENT OF HEALTH AND ENVIRONMENTAL CONTROL and Mayo Read, Jr., Respondents.**

**No. 4616.**

Court of Appeals of South Carolina.

Submitted June 10, 2009.

Decided Sept. 9, 2009.

Withdrawn, Substituted and Refiled Nov. 24, 2009.

34

John P. Seibels, Jr. and Jason Scott Luck, both of Charleston, for Appellant.

Carlisle Roberts, Jr., of Columbia; Davis A. Whitfield–Cargile, of North Charleston; and Elizabeth Applegate Dieck, of Charleston, for Respondent South Carolina Department of Health and Environmental Control; Richard L. Tapp, Jr. and Stephen P. Groves, Sr., both of Charleston, for Respondent Mayo Read, Jr.

KONDUROS, J.

Too Tacky Partnership (Too Tacky) appeals the South Carolina Department of Health and Environmental Control's (DHEC) issuance of a permit allowing Mayo Read, Jr. to construct a dock. We affirm.

## PROCEDURAL BACKGROUND/FACTS

In 1992, Too Tacky purchased a parcel of land (Lot 4) bordering the Leadenwah River. Lots 1, 2, 3, and 4 are side-by-side with Lot 3 positioned along the western border of Lot 4. The lots all belonged to a common owner at one time and were subdivided and sold to Too Tacky, Mayo Read, Sr. (Lot 1), Ellen Read (Lot 2), and Mayo Read, Jr. (Lot 3).[1] In the early 1990s, Too Tacky built a dock off Lot 4 extending into the Leadenwah River. In 2004, Mayo Read, Jr. sought a critical area permit from DHEC's Office of Ocean and Coastal Resource Management (OCRM) to construct a dock into the Leadenwah River from a right-of-way running east toward the river on the northern borders of Lots 1, 2, 3, and 4. Read's dock would be constructed off the portion of the right-of-way located on Lot 4.

In applying for the permit, Read submitted a permit application form listing Too Tacky as an adjoining landowner. The application described the location of the project to be on Tacky Point Road at the "end of easement," The application also

---

1. Mayo Read, Jr. has since sold Lot 3 to his father, Mayo Read, Sr.

included an affidavit of ownership or control with preprinted boxes for the applicant to check. Read indicated he was the "record owner" of the property described in the application, which was the "end of right of way" on "Tacky Point Road." Read further affirmed the preprinted language, stating he would get prior approval of all other persons with legal interests in the property and if he was not the record owner, would submit written permission of the owner. Read submitted a drawing of the project and indicated again the dock would be located at the end of a fifty-foot easement for the benefit of Lots 1, 2, and 3. Read further provided an uncertified plat signed by the original owner of the parcel and the purchasers of the subdivided Lots recognizing the fifty-foot easement for drainage and creek access by Lots 1, 2, and 3. From the record, it does not appear the plat was submitted with the application but was submitted prior to the application's approval.

Too Tacky was notified of Read's application and objected via letter from its attorney. In that letter, Too Tacky set forth several bases for its objection. First, Too Tacky contended Read's proposed dock would violate Regulation 30–12(A)(2)(a) of the South Carolina Code (current version at Regulation 30–12(A)(1)(a) (Supp.2008)), which prohibits the building of two docks on the same parcel of land absent special circumstances and prevents docks from impeding the navigation of the waters upon which they are constructed. Too Tacky further argued Read's application was improper because he was not the record owner of Lot 4, and he did not present sufficient proof of a property interest in Lot 4 that would allow construction of a dock. Finally, Too Tacky cited the negative use-and-enjoyment and financial impacts the construction of Read's dock would have on Too Tacky's property, specifically because the dock would be in close proximity to the residence on Lot 4.

OCRM granted Read's permit application over Too Tacky's objections. Too Tacky appealed the grant of the permit, which the Administrative Law Court (ALC) and the Coastal Zone Management Appellate Panel (Appellate Panel) both affirmed. The circuit court affirmed the issuance of the permit, and this appeal followed.

## STANDARD OF REVIEW

█ An appellate court "may not substitute its judgment for the judgment of the agency as to the weight of the evidence on questions of fact." S.C.Code Ann. § 1–23–380(5) (Supp.2008). However, the court may reverse or modify a final agency decision if the agency decision was affected by an error of law, was clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record, or was arbitrary or capricious or characterized by an abuse of discretion or a clearly unwarranted exercise of discretion. *Id.* The DHEC Board's findings are presumptively correct, and therefore, the challenging party bears the burden of proving its decision was erroneous in view of the substantial evidence in the record. *Leventis v. S.C. Dep't of Health & Envtl. Control,* 340 S.C. 118, 136, 530 S.E.2d 643, 653 (Ct.App.2000).

## LAW/ANALYSIS

### I. Read's Application and Affidavit

Too Tacky contends OCRM erred in granting Read's permit because Read's application was incomplete, and his affidavit contained false information. We disagree.

Pursuant to statute, applications for permits from OCRM shall include the following:

(1) Name and address of the applicant.

(2) A plan or drawing showing the applicant's proposal and the manner or method by which the proposal shall be accomplished.

(3) A plat of the area in which the proposed work will take place.

(4) A copy of the deed, lease or other instrument under which the applicant claims title, possession or permission from the owner of the property, to carry out the proposal.

(5) A list of all adjoining landowners and their addresses or a sworn affidavit that with due diligence such information is not ascertainable.

S.C.Code Ann. § 48–39–140(B) (2008). The companion DHEC regulation, Regulation 30–2(B)(4) of the South Carolina Code (Supp. 2008), states that a certified copy of the deed, lease, or other instrument under which the applicant claims title, pos-

session, or permission shall ordinarily be required to complete the application.

The Appellate Panel concluded Read's affidavit and the copy of the plat submitted by Read constituted an "other instrument" as contemplated by the statute and regulation. The interpretation by an agency of its own regulation is given great deference. *Earl v. HTH Assocs., Inc./Ace Usa Ins. Co. of N. Am.*, 368 S.C. 76, 81, 627 S.E.2d 760, 762 (Ct.App.2006). In this case, the plat was a document signed by the landowner and purchasers at the time of subdivision. The plat was stamped as approved by Charleston County Council and recorded in the register mesne conveyances' office (RMC). Consequently, the plat appears to have the requisite formality associated with the term instrument. As defined in Black's Law Dictionary, an instrument is a "written legal document that defines rights, duties, entitlements, or liabilities, such as a contract, will, promissory note, or share certificate." Black's Law Dictionary 869 (9th ed. 2009). In this case, the plat defines the right conveyed by the common grantor to the original grantees of a fifty-foot easement for drainage and creek access to benefit Lots 1, 2, and 3. Furthermore, two other South Carolina cases have found plats to be instruments. *See Sutcliffe v. Laney Bros.*, 247 S.C. 417, 422, 147 S.E.2d 689, 691 (1966) (stating subject property had not been divided by plat or other instrument of record); *see also Hamilton v. CCM, Inc.*, 274 S.C. 152, 154, 263 S.E.2d 378, 379 (1980) ("[T]he outcome of this litigation is largely controlled by the construction given an instrument referred to as the Harbour Town Townhouse Plat.").

Additionally, Too Tacky contends the application was incomplete because the other instrument was not certified. However, the statute does not require the instrument to be certified and the regulation allows for some flexibility in this requirement by employment of the term ordinarily. Furthermore, as DHEC points out, Too Tacky does not dispute the plat submitted to OCRM was not identical to the one on file with RMC. Consequently, Too Tacky was not prejudiced based on the lack of certification of the plat.

Finally, Too Tacky argues Read's affidavit was false because he claimed to be the record owner of the property at

issue. However, as discussed in the facts, Read made numerous references to the fact that his proposed dock would be at the end of an easement. He never suggested, other than by checking the pre-printed "record owner" box, that he owned Lot 4. Therefore, any perceived falsity in his affidavit could not have misled OCRM about the nature of Read's property interest.[2]

## II. Ownership of Easement

Too Tacky next contends Read failed to sufficiently prove the existence and scope of the easement on Lot 4. We disagree.

■ OCRM is neither authorized nor required to make final legal determinations regarding the existence or precise nature of property rights in the permitting process. If an adjoining landowner objects to the assertion of the applicant's property interest, then the regulations provide the permitting process will be held in abeyance if litigation to quite title in the property is commenced.

If the alleged adjoining landowner of critical area files a written objection to the permit application within the period prescribed in Section 48–39–140 (15 days for minor and 30 days for major permits) based upon a claim of ownership and indicates an intention to file a court action pursuant to Section 48–39–220, the application will be deemed incomplete and further processing of the permit will not take place until a final judicial decision is rendered by a court of competent jurisdiction. However, written proof of filing a court action pursuant to Section 48–39–220 must be received by the Department within 30 days of the date of the expiration of the comment period. If no such written proof

2. At oral argument, Too Tacky contended the plat at issue could not satisfy the requirements of subsections (3) and (4) of section 48–39–140(B). However, Too Tacky did not raise this issue until oral argument. Therefore, we will not consider it. *See In the Interest of Bruce O.*, 311 S.C. 514, 515 n. 1, 429 S.E.2d 858, 858 n. 1 (Ct.App.1993) ("This court will not grant relief on an alleged error asserted for the first time on appeal. Further, an appellant may not use oral argument as a vehicle to argue issues not argued in the appellant's brief.").

is timely received, the permit will be processed pursuant to law.

S.C.Code Ann. Regs. 30–2(I)(3) (Supp.2008).

Based on this regulation, neither OCRM nor DHEC has the authority to make ultimate legal findings regarding parties' interests in property. The regulation and permitting process allows adjoining landowners to assert their interest and protect their rights through actions filed with a "court of competent jurisdiction." In the absence of such assertion, OCRM will proceed with its review of the application.

■ With that in mind, OCRM cannot ignore the objections or concerns of adjoining landowners. A permit applicant must present a cognizable *"claim* [to] title, possession or permission from the owner of the property to carry out the proposal." § 48–39–140(B)(4) (emphasis added). The ALC concluded this means the applicant must make a *prima facie* showing of ownership or permission. We agree with that standard and with the conclusion that Read met his burden in this case.

### III. One Dock Rule

■ Too Tacky next argues OCRM violated Regulation 30–12(A)(2)(a) of the South Carolina Code (Supp. 2004) when a dock on Lot 4 already existed.[3] We disagree.

The regulation stated "[d]ocks and piers shall *normally* be limited to one structure per parcel." (emphasis added). The use of this language necessarily vests OCRM with some discretion to allow more than one dock per parcel. According to Frederick Mallet, project manager for Read's application, the easement providing for creek access constituted a special circumstance to be considered in granting Read's permit. Curtis Joyner, another DHEC employee involved in the permitting process, agreed the easement was an unusual circumstance that would permit more than one dock on Lot 4 as well as the fact that Lots 1, 2, and 3 were owned by one family. Because there was discretion given to OCRM by the plain language of the statute, and Mallet and Joyner could articulate

---

**3.** This is currently Regulation 30–12(A)(1)(a) of the South Carolina Code (Supp. 2008), and the "normally" language is no longer included.

a basis for exercising that discretion, we cannot conclude the circuit court erred in affirming the ALC on this point.

## IV. Impact on Adjoining Landowners

Finally, Too Tacky contends OCRM failed to consider how the construction of Read's dock would impact the value and enjoyment of its property, a question that should be considered pursuant to Regulation 30–11(B) of the South Carolina Code (Supp. 2008).[4] We disagree.

Too Tacky maintains Frederick Mallet's testimony on this point is somewhat conflicting. Mallet testified he believed consideration was given to the ten factors during the permitting process; however, he did not think the diminishment in value of Lot 4 had come up. Mallet also testified the original dimensions of the dock were altered to ensure it did not extend beyond the property lines of the easement and the roof was deleted to lessen visual impact. Consequently, the record indicates the impact to the adjoining landowner was considered. Furthermore, Too Tacky did not present any evidence to show how the dock would financially impact the value of its property. In sum, it cannot be said OCRM erred in granting Read's permit on the basis of this argument.

## CONCLUSION

We find there was evidence upon which OCRM could have reasonably relied in awarding the dock permit to Read. We give great deference to an agency's interpretations of its own regulations, and we cannot conclude the circuit court clearly erred in affirming the issuance of the permit because of any alleged irregularities with the application and affidavit themselves. Furthermore, we agree with the circuit court that OCRM is not vested with the authority to make binding legal findings regarding the validity of parties' interest in property. So long as the petitioner presents a prima facie case of ownership of or sufficient interest in the land, OCRM has not clearly erred in granting the permit. We further find OCRM was vested with some discretion in determining wheth-

---

4. Reg. 30–11(B) sets forth ten factors OCRM should consider in issuing a permit including "[t]he extent to which the proposed use could affect the value and enjoyment of adjacent owners."

er circumstances warranted the erection of a second dock on Lot 4. Accordingly, the circuit court did not err in finding OCRM did not violate Regulation 30–12(A)(2)(a). Finally, evidence in the record supports the circuit court's finding OCRM considered the impact issuing the permit would have on adjoining landowners. Accordingly, the decision of the circuit court is

**AFFIRMED.**

HEARN, C.J., and THOMAS, J., concur.